**Jeffrey CAMPBELL**

v.

**MINNEAPOLIS PUBLIC HOUSING AUTHORITY, In and For the CITY OF MINNEAPOLIS; and Cora McCorvey, in her official capacity as Executive Director of the Minneapolis Public Housing Authority.**

**No. 4–96–CV–1163.**

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 16, 1997.

Dorinda Lea Wider, Legal Aid Society of Minneapolis, Minneapolis, MN, for plaintiff.

John D. Cann, Cann Law Office, Andrew D. Parker, Matthew Edwin Johnson, Smith Parker, Minneapolis, MN, for defendants.

## ORDER

ROSENBAUM, District Judge.

The Minneapolis Public Housing Authority ("MPHA") inquires into housing applicants' drug or alcohol abuse histories, and requires applicants to submit medical records relating to drug and/or alcohol treatment. It does so in an effort to comply with recently-enacted law, and to protect resident tenants. Plaintiff, Jeffrey Campbell, claims to be a homeless man with a history of drug abuse. Mr. Campbell was denied a place on the MPHA's waiting list due to his history of drug abuse. Campbell claims the MPHA has discriminated against him and others similarly situated, in violation of federal, state, and local laws.

Each party seeks summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P"), and plaintiff moves for class certification, pursuant to Fed.R.Civ.P. 23. For the reasons set forth below, plaintiff's individual motion for summary judgment is granted in part. Plaintiff's motion for class certification is denied. Defendants' motion for summary judgment is necessarily denied.

### I. *Background*

Defendant MPHA is a public body, created under Minnesota law, which owns, rents, and manages public housing units throughout Minneapolis. Defendant Cora McCorvey is

the Executive Director of the MPHA. Plaintiff, Jeffrey Campbell, is a Minnesota resident. Jurisdiction is premised on 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

To be eligible for public housing, an applicant must qualify under federal regulations and meet the MPHA's applicant criteria. An applicant who completes the application process, but is denied MPHA housing, is entitled to an administrative appeal before an MPHA employee panel. The panel consists of persons who have not previously worked on the applicant's file.

The MPHA application process includes an application form and an interview with an MPHA representative. The seventh question on the application form ("Question 7") asks: "Have you or any member of your family intending to live with you in public housing EVER been in a detoxification center or a chemical dependency treatment program? Yes or No. If so, where?" Plaintiff's Exhibit I, at 1. The MPHA requires that applicants execute a release form, allowing it to obtain medical records, drug or alcohol treatment summaries, program involvements, case plans, and detox admissions from the Hennepin County Chemical Health Division.[1] An applicant must also provide a 36 month rental history or, alternatively, three reference letters.

Mr. Campbell applied for public housing on May 8, 1996. He answered "Yes" to Question 7 and signed the medical release form. The MPHA interviewer reviewed Campbell's application and asked him to provide proof of having completed chemical dependency treatment. Campbell complied. Lacking a 36 month rental history, he procured three letters of reference. In one of those letters, a Hennepin County social worker raised the issue of Campbell's drug use.

Campbell's housing application was denied based on the reference letter, the answer to Question 7, and the medical records obtained pursuant to the release form. Campbell appealed the denial. An administrative hearing was held on October 17, 1996. At the hearing, Campbell admitted to drinking "a six-pack of beer a couple of times a month." Campbell Decl. ¶ 30. Campbell denied any current use of illegal drugs, but admitted using drugs as recently as March, 1995. The appeal panel upheld the MPHA's denial based on Campbell's current alcohol use, a history of paranoid behavior when abusing drugs, and a history of minor crimes admittedly related to drug abuse.

Campbell commenced this action on November 27, 1996, claiming his past drug or alcohol addiction constitutes a disability, as defined by the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C.A. § 3602(h) (West 1996), the Rehabilitation Act of 1973 § 504 (" § 504"), 29 U.S.C.A. § 706(8)(B) (West 1996), the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12102(2) (West 1996), the Minnesota Human Rights Act ("MHRA") Minn.Stat. § 363.03 Subd. 13 (1995), and the Minneapolis Civil Rights Ordinance ("MCRO"), Minneapolis, Mn, Code of Ordinances Title 7, Ch. 139, § 139.20 (1991). In particular, Campbell claims the MPHA's inquiries into past drug or alcohol abuse are prohibited by the FHAA and HUD regulations, published at 24 C.F.R. § 100.202(c) (1996). He further claims the MPHA discriminates against those with histories of prior drug or alcohol abuse, in violation of the FHAA, ADA, § 504, the MHRA, and the MCRO (collectively referred to as "the anti-discrimination statutes").

Campbell seeks, among other things: (1) a declaration that the MPHA is in violation of the cited laws and ordinances; (2) an injunction barring the MPHA from asking housing applicants about the use of detoxification centers or chemical dependency treatment programs, or requiring applicants to sign medical release forms as part of the application process; (3) a mandatory injunction placing plaintiff on the MPHA's housing waiting list, in a place appropriate to the time and date of his application; (4) an order requiring the MPHA to develop and implement, within 60 days, a written policy ensuring a discrimination free application process; and, (5) an award of compensatory damages for claimed

---

1. The MPHA has modified its housing application procedure pending the outcome of this litigation. It has removed Question 7, and suspended the medical record release requirement until a ruling is made in this case.

emotional distress, and the difference between any rent plaintiff has paid, and the rent he would have been charged in public housing.

Campbell also moves to certify a class consisting of all individuals with disabilities who have in the past three years applied, are presently applying, or will apply in the future, for housing administered by the MPHA.

The MPHA replies by denying it has violated any law or ordinance, and maintains that inquiries into past drug and/or alcohol abuse are permissible under the Housing Program Opportunity Extension Act of 1996 ("Extension Act"), Pub L. No. 104–120. The MPHA claims its inquiries enable it to screen out those whose pattern of abuse "may interfere with the health safety or peaceful enjoyment of the premises by other residents of the project...." 42 U.S.C. § 1437n(1)(a)(ii).

## II. *Summary Judgment*

Summary judgment is appropriate when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). There is no dispute regarding the material facts in this case, and the matter is ripe for summary disposition.

■ In order to resolve this case, the Court must reconcile the anti-discrimination statutes and the Extension Act.[2] In undertaking this analysis, the Court is mindful that "[s]tatutory interpretation requires more than concentration upon isolated words; rather, consideration must be given to the total corpus of pertinent law and the policies that inspired ostensibly inconsistent provisions." *Boys Markets v. Retail Clerks Union Local 770,* 398 U.S. 235, 250, 90 S.Ct. 1583, 1592, 26 L.Ed.2d 199 (1970).

In its attempt to satisfy the Extension Act's statutory objectives set forth at Section 1(a)(ii), the MPHA requires all housing applicants to indicate whether they have gone through drug or alcohol treatment, and to provide access to their medical records. The Court finds, however, that the MPHA's application requirements fall beyond the authority granted in the Extension Act and violate provisions of the anti-discrimination acts. For the reasons set forth below, the MPHA is enjoined from further use of these application practices.

■ The Extension Act does not authorize the MPHA's procedures. The Act does not repeal pre-existing anti-discrimination acts,[3] nor is it superfluous or a nullity.[4] Rather, the Extension Act heightens the minimum requirements a housing applicant

---

**2.** The 1996 Extension Act added the following provisions to 42 U.S.C. § 1437n:

(1) In General. Notwithstanding any other provisions of law, a public housing agency shall establish standards for occupancy in public housing dwelling units and assistance under section 8—

(a) that prohibit occupancy in any public housing dwelling unit by, and assistance under section 8 for, any person—

(i) who the public housing agency determines is illegally using a controlled substance; or

(ii) if the public housing agency determines that it has reasonable cause to believe that such person's illegal use (or pattern of illegal use) of a controlled substance, or abuse (or pattern of abuse) of alcohol, may interfere with the health, safety, or right to peaceful enjoyment of the premises by other residents of the project....

**3.** The Court cannot assume Congress repealed two decades of legislation aimed at eradicating discrimination, in the absence of a clear intent to do so. Repeal by implication is disfavored unless the earlier and later statutes are irreconcilable. *See Morton v. Mancari,* 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974).

Although the Extension Act states it applies, "notwithstanding any other provisions of law ...," it contains no express repealer of any statute. *Compare In re Glacier Bay,* 944 F.2d 577 (9th Cir.1991) (holding the phrase did not apply when there was no conflict between the Trans-Alaska Pipeline Authorization Act and the Limitation of Vessel Owner's Liability Act)

**4.** The Court properly seeks to reconcile all of the Congress's mandates while attempting to give meaning to all legislative enactments. *Rosado v. Wyman,* 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed.2d 442 (1970). In doing so, a Court "must avoid statutory interpretation that renders any section superfluous and does not give effect to all of the words used by Congress." *In re Windsor on the River Assoc.,* 7 F.3d 127, 130 (8th Cir.1993) (quotation marks and citation omitted).

must meet in order to be otherwise qualified. *C.f.* 42 U.S.C. § 12132; 29 U.S.C. § 794(a); *Davis v. Francis Howell School Dist.*, 104 F.3d 204, 206 (8th Cir.1997) (even a party protected by the anti-discrimination statutes must be otherwise qualified for benefit or service); *see also Ring v. First Interstate Mortgage*, 984 F.2d 924, 926–27 (8th Cir. 1993). But as it makes its determination whether an applicant is otherwise qualified, the MPHA may not introduce discriminatory assumptions or unlawful requirements into the application process.

The FHAA, ADA, and § 504 of the Rehabilitation Act prohibit discrimination based on disability.[5] The FHAA particularly prohibits housing discrimination based on disability. *See* 42 U.S.C.A. § 3604. HUD's implementing regulations prohibit inquiries which seek to determine whether an applicant is disabled, and inquiries into the nature or severity of an applicant's disability, 24 C.F.R. § 100.202(c). The regulations do require that:

> [T]he tenant selection criteria to be established and information to be considered shall be reasonably related to individual attributes and behavior of the applicant and shall not be related to those which may be imputed to a particular group or category of persons of which an applicant may be a member.

24 C.F.R. 960.205(a).

The statutes define "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) *See also* 42 U.S.C. § 3602(h) (FHAA); 29 U.S.C. § 706(8)(B) (§ 504) Past substance abuse is recognized as a disability under these statutes. *See, e.g., United States v. Southern Mgmt. Corp.*, 955 F.2d 914, 922–23 (4th Cir.1992) (holding that drug addicts with a one year record of sobriety qualify as disabled under the FHAA, ADA, and § 504); *Teahan v. Metro–North Commuter R.R. Co.*, 951 F.2d 511, 517 (2nd Cir.

1991) ("[I]t is clear that substance abuse is a 'handicap' for purposes of the Rehabilitation Act."); *Crewe v. United States Office of Personnel Mgmt.*, 834 F.2d 140, 141 (8th Cir. 1987) ("[T]here can be little doubt that alcoholism is a handicap for the purposes of the [Rehabilitation] Act.").

■ But while these statutes and cases recognize past drug use as a disability, it does not follow that current drug abuse qualifies for the same treatment. 42 U.S.C. § 3602(h) (FHAA); 29 U.S.C. § 706(8)(C)(I) (§ 504); 28 C.F.R. § 35.131(ADA). The Extension Act's reference to both present behavior and to a pattern of behavior compels public housing authorities to tread a narrow path. Housing authorities must differentiate between current drug and alcohol abusers or those engaged in a pattern of abuse, from those who had—but have solved—such a problem in the past. A former addict, who is no longer abusing substances, falls within the definition of one with a disability. But one currently abusing, or who demonstrates a pattern of abuse, is properly barred from public housing. The failure to make this essential distinction subjects a public housing authority to a claim of discrimination.

The regulations clearly permit inquiries of all housing applicants designed to determine a prospective tenant's ability to meet tenancy requirements, to assess current illegal drug use, or to discover past convictions for illegal manufacture or distribution of a controlled substance. 24 C.F.R. § 100.202(c)(1), (4)-(5). HUD's regulations require housing authorities to verify applicant information. The regulations suggest, among other things, that drug treatment centers, clinics, and physicians may be appropriate sources of information "where warranted by the particular circumstances." 24 C.F.R. 960.206(a)-(b).

■ The Court finds that the MPHA's universal use of Question 7 and its practice of requiring all applicants to execute medical record release forms fall beyond the scope of permissible inquiry under the anti-discrimination acts and their implementing regula-

---

5. The MHRA and MCRO provide similar protection at the State and local level. The Court applies the same analysis to those claims as it applies to the federal claims. The term "handicap" is used instead of "disability" in § 504 and the FHAA.

tions. Although the Extension Act bars from public housing current chemical abusers and persons whose pattern of abuse is likely to interfere with another tenant's quiet enjoyment, it does not authorize a blunderbuss inquiry into every housing applicant's medical records.

The mere existence of a record disclosing the simple fact of distant historical drug use does little to inform the MPHA of an applicant's ability to meet the tenancy requirements. There is even greater concern for the sanctity of records for those with no history of substance abuse. The idea that American citizens must prove themselves innocent of wrongdoing to avail themselves of a government-provided benefit, such as public housing, is antithetical to our laws. But the MPHA requires everyone—everyone—to open up their long-protected medical files as a condition of applying for public housing. Such an invasion exceeds the lengths to which the MPHA is entitled to go in order to protect its tenants.

■ On the other hand, if there is articulable evidence of drug or alcohol abuse, the MPHA may require applicants to furnish information or reasonable assurances showing the applicant is not currently abusing, or exhibiting a pattern of abusing, drugs or alcohol. If the MPHA obtains information leading to a reasonable conclusion that there has been recent chemical use, it has a reasonable basis to deny the applicant public housing.

■ The Court makes clear, that in order to find that an applicant is currently using drugs, the MPHA need not "require that a drug user have a heroin syringe in his arm or a marijuana bong to his mouth at the exact moment contemplated." *Shafer v. Preston Memorial Hosp. Corp.*, 107 F.3d 274, 278 (4th Cir.1997) (construing the phrase "currently using" in the context of an ADA employment claim). The plain meaning of "currently" is "a periodic or ongoing activity in which a person engages . . . that has not yet permanently ended." *Id.*

■ This ruling is not intended to bar the MPHA from undertaking a more expansive inquiry into an applicant's medical history if it develops an articulable basis upon which to find there has been recent drug use or unacceptable conduct. *See* 42 U.S.C.A. 1437n. Thus, when there is affirmative evidence regarding recent illegal drug use, or a pattern of abuse, or when there is a lack of reasonable assurance regarding the cessation of prior illegal drug use, or there are supportable concerns regarding the disruptive potential of a particular applicant, inquiries of drug treatment centers, or physicians may be made. *See* 24 C.F.R. § 960.206(b).

## III. *The Present Case*

■ Campbell claims that, but for the information obtained in Question 7 and his medical records, the MPHA would not have denied his application. As a result, he requests a mandatory injunction directing the MPHA to place him on its waiting list and an award of compensatory damages. Mr. Campbell's request is denied. Under the acknowledged facts in this case, the MPHA had a reasonable basis to find Campbell ineligible for housing based on recent drug use, even in the absence of information obtained from Question 7 or his medical records.

As shown above, information indicating a history of drug abuse may, in some circumstances, permit further inquiries into an applicant's medical history. In Campbell's case, the social worker's letter which he submitted indicated past drug abuse. This fact, along with Campbell's criminal history and lack of residential history, warranted inquiries into past treatment and medical records regarding drug abuse. Accordingly, while the MPHA should not have initially required Campbell to sign a medical records release form or answer Question 7, such a requirement was proper once it obtained further information (in this case, the social worker's letter) Thus, the error in this regard was harmless.[6] *Accord Saxton v. Housing Auth.*

---

6. The MPHA also cited Campbell's criminal history as an independent basis for the denial of his initial application. At the administrative appeal, Campbell argued that his criminal behavior was

related to his past drug abuse and should be discounted, since he had undergone drug treatment. It appears, but the Court does not decide, that in order to make this argument, Campbell

**538**

*of Tacoma,* 1 F.3d 881 (9th Cir.1993) (holding that although tenant was entitled to hearing, denial of hearing was harmless, as it would not have changed the outcome).

Therefore, while the Court finds the MPHA violated rights provided by one or more of the anti-discrimination statutes, plaintiff may not recover compensatory damages. Injunctive relief, however, may still lie under 42 U.S.C. § 3613(c)(1).[7] The MPHA has currently suspended the use of Question 7 and medical records release forms. This, however, does not guarantee they will not resume those practices in the future. Courts view efforts made to avoid injunctive relief by instituting reforms after litigation has begun with some skepticism. *See United States v. Oregon State Medical Soc.,* 343 U.S. 326, 334, 72 S.Ct. 690, 696, 96 L.Ed. 978 (1952).

### IV. Class Certification

Campbell moves to certify a plaintiff class under Fed.R.Civ.P. 23. The four prerequisites for any class action are numerosity, commonality, typicality, and adequacy of representation. Fed.R.Civ.P. 23(a); *Bishop v. Committee on Professional Ethics & Conduct of Iowa State Bar Ass'n,* 686 F.2d 1278, 1287 (8th Cir.1982). The putative class must also satisfy the subdivisions of Rule 23(b). The burden of demonstrating the fulfillment of these requirements rests with the plaintiff. *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir. 1994). Here, the Court finds Campbell has failed to meet his burden.

■ Campbell proposes a class consisting of all disabled individuals who have applied for MPHA housing within the past three years, as well as all disabled individuals currently applying, and those who will apply in the future. This definition encompasses not only those individuals disabled due to drug or alcohol addiction, but also those with other disabilities as well.

This proposed class does not present common questions of law or fact. Question 7 and

the medical release form relate to drug or alcohol-related disabilities only. There is no allegation that the MPHA impermissibly inquired into any other disability. Thus, individuals disabled for reasons other than drug or alcohol addiction cannot base a claim on the allegations in Campbell's complaint.

■ Even if the Court were to *sua sponte* amend the proffered class definition to those applicants who are disabled due to drug or alcohol addiction, certification must still be denied. To satisfy the numerosity requirements, Campbell offers statistics showing there were over 9000 housing applicants whose applications were withdrawn, denied, or awaiting action from September through December, 1996. Of those applicants, 141 were categorized as disabled by the MPHA. Campbell has not, however, offered any indication of how many applicants were disabled due to drug or alcohol addiction. Thus, he has failed to establish that the class is so numerous as to make joinder impractical.

### V. Conclusion

Based on the files, records, and proceedings herein, and for the reasons set forth herein, IT IS ORDERED that:

1. Defendants' motion for summary judgment is denied.

2. Plaintiff's motion for class certification is denied.

3. Plaintiff's motion for summary judgment is granted, to the extent that defendants are permanently enjoined from the general use of Question 7 and from requiring all applicants to execute medical record release forms.

4. Plaintiff's motion for summary judgement is denied in all other regards.

IT IS SO ORDERED.

---

would have had to provide his treatment records. Therefore, even assuming arguendo that the social worker's letter did not warrant inquiries into Campbell's medical records, Campbell, himself, was required to present them to the appeals panel.

7. 42 U.S.C. § 3613(c)(1) reads in relevant part, "[I]f the court finds that a discriminatory housing practice has occurred or is about to occur, the court may ... grant as relief, as the court deems appropriate, any permanent or temporary injunction."