# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1075

_____

| | | |
|---|---|---|
| Jeffrey Campbell, on behalf of | * | |
| himself and others similarly situated, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeals from the United States |
| Minneapolis Public Housing Authority, | * | District Court for the |
| in and for the City of Minneapolis, a | * | District of Minnesota. |
| public body corporate and politic; | * | |
| Cora McCorvey, in her official | * | |
| capacity as Executive Director of the | * | |
| Minneapolis Public Housing | * | |
| Authority, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

No. 98-1076

_____

| | |
|---|---|
| Jeffrey Campbell, on behalf of himself | * |
| and others similarly situated, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Minneapolis Public Housing Authority, | * |
| in and for the City of Minneapolis, a | * |

public body corporate and politic,       *
                                          *
            Defendant - Appellant,        *
                                          *
Cora McCorvey, in her official capacity   *
as Executive Director of the              *
Minneapolis Public Housing Authority,     *
                                          *
            Defendant.                     *

_____

Submitted: October 21, 1998
    Filed:  February 10, 1999
_____

Before BOWMAN, Chief Judge, BRIGHT, and RICHARD S. ARNOLD, Circuit
    Judges.
_____

BOWMAN, Chief Judge.

After he was denied eligibility for public housing, Jeffrey Campbell filed a federal class-action lawsuit against the Minneapolis Public Housing Authority (MPHA). Campbell's suit alleged that the MPHA had violated federal, state, and local anti-discrimination provisions by requiring all applicants to disclose private information about a protected disability, past drug addiction, and by discriminating against applicants on the basis of the information disclosed. The District Court, deciding the case by ruling on cross-motions for summary judgment, enjoined the MPHA's challenged practices of inquiring into all applicants' chemical-dependency treatment histories and requiring that applicants release certain chemical-dependency treatment records to the MPHA. However, the District Court denied Campbell's request for class certification and other relief, such as damages or a mandatory injunction placing him on the waiting list for MPHA public housing. Both sides appeal. We vacate the injunction, vacate the denial of individual relief, and remand

-2-

the question of Campbell's eligibility for public housing to the MPHA for redetermination.

I.

The MPHA is a public entity that owns and manages almost 6600 units of publicly assisted housing in Minneapolis. The MPHA receives federal funding from the United States Department of Housing and Urban Development (HUD), and must comply with HUD regulations and federal law to receive this funding.

Applicants seeking public-housing assistance from the MPHA must qualify under federal and state guidelines. To determine whether an applicant qualifies, the MPHA requires that all applicants complete an application, which includes a questionnaire and release forms that give the MPHA access to the applicant's criminal history and certain chemical-dependency treatment records. Applicants must also provide a thirty-six-month rental history or three letters of reference.

The MPHA public-housing application contains two items that Campbell challenges in this litigation. First, question 7 on the MPHA questionnaire asks applicants, "Have you or any member of your family intending to live with you in public housing EVER been in a detoxification center or a chemical dependency treatment program? . . . If yes, where?" Appellants' App. at 48. Second, all MPHA public-housing applicants must sign a release form that allows the MPHA to obtain "[t]reatment summaries, program involvements, case plans and detox admissions" from the Hennepin County Community Services Chemical Health Division. See id. at 52.

In May 1996, Jeffrey Campbell, a thirty-three-year-old man who had been homeless for approximately four years, applied for MPHA public housing. As part of his application, Campbell answered question 7 affirmatively, indicating he had

-3-

been in a chemical-dependency or detoxification treatment program. The MPHA interviewer requested, and Campbell later provided, proof that Campbell had completed a chemical-dependency treatment program in 1993. Campbell also executed the required releases permitting the MPHA to review his chemical-dependency treatment and criminal-history records. Finally, because he had been homeless and could not supply a thirty-six-month rental history, Campbell supplied three reference letters. One of these reference letters, written by a social worker at the Hennepin County Medical Center, mentioned Campbell's past drug use: "Mr. Campbell has a history of drug use, and I will leave it to him to give you the details on that." Id. at 55.

The MPHA accessed Campbell's chemical-dependency treatment and criminal-history records and reviewed Campbell's application, including the affirmative answer he had given to question 7 and the reference letter mentioning his past drug use. Campbell's chemical-dependency treatment records indicated that Campbell had used cocaine in March 1995, and possibly as late as August 1995. See id. at 37 (Declaration of Jeffrey Campbell) (admitting the use of illegal drugs in March 1995); id. at 33 (Defendants' Answer) (indicating Campbell's chemical-dependency treatment records revealed that in March 1995 Campbell admitted he "currently and regularly" used illegal drugs, and, that on August 1, 1995, he "continued to use cocaine on a weekly basis"). Campbell's criminal record, meanwhile, showed that in 1990 or 1992 he had been arrested or convicted for disorderly conduct, profanity in public, theft, and theft by check. See id. at 37 (Declaration of Jeffrey Campbell); id. at 56 (Letter from the MPHA to Campbell, Aug. 28, 1996).

The MPHA denied Campbell's public-housing application on August 28, 1996. In a letter, the MPHA indicated it was denying his application for the following reasons:

- You have a criminal history which includes arrests and/or convictions for: disorderly conduct, profanity in public, theft, and theft by check ($20-$500).

- According to an assessment done by the Hennepin County Community Services Chemical Health Division you have recently used illicit drugs and have a problem with alcohol. You have a history of paranoid behavior when using.

Id. at 56.

Campbell appealed the MPHA's decision, and received a review hearing before a three-person MPHA hearing panel on October 17, 1996. The hearing panel, made up of one MPHA employee and two MPHA residents, heard Campbell's appeal and denied his application. The hearing panel again cited Campbell's drug and alcohol use as the reasons for its denial:

1) Although Mr. Campbell has received treatment for drug/alcohol use he admits he is still using. Mr. Campbell exhibits paranoid behaviors when using, according to [Hennepin County Community Services].

2) Committee felt Mr. Campbell needs to resolve chemical use issues--including alcohol.

Id. at 60.

Campbell then filed this lawsuit in the District Court. He alleged that the MPHA had required him and other applicants to disclose a protected disability, past drug addiction, and had discriminated against them on the basis of this disability, in violation of the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 (1994); § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1994); the

Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131-12134 (1994); the United States Housing Act, 42 U.S.C. § 1437-1437ff (1994); federal regulations implementing these statutory provisions; the Minnesota Human Rights Act, Minn. Stat. § 363.03 subd. 4 (1996); and the Minneapolis Civil Rights Ordinance, Minneapolis, Minn., Code of Ordinances tit. 7, § 139 (1991).[1]  Campbell sought wide-ranging relief: (1) a declaration that the MPHA inquiry and release requirement violate federal and state law; (2) an injunction to prevent the MPHA from making such inquiries and requiring the release of such records as part of its public-housing application process; (3) a mandatory injunction placing Campbell on the waiting list in a position appropriate for the time when he submitted his application; (4) an order requiring the MPHA to promulgate a written policy ensuring a nondiscriminatory application process; and (5) an award of compensatory damages for economic damages and emotional distress.  See Campbell v. Minneapolis Pub. Hous. Auth., 175 F.R.D. 531, 534 (D. Minn. 1997).

---

[1]Federal civil rights statutes may afford some protection to past drug addicts, but do not protect individuals who currently use illegal drugs.  See, e.g., 42 U.S.C. § 12210(b) (1994) (stating the ADA's protections do not extend to current drug use); 29 U.S.C. § 706(8)(C)(1994) (excluding current drug use, but not some past drug use, from the Rehabilitation Act's protections); see also Nielsen v. Moroni Feed Co., 162 F.3d 604, 609 (10th Cir. 1998) (stating that, although unsatisfactory conduct "caused by alcoholism or drug abuse does not receive protection under the ADA or the Rehabilitation Act[,] . . . the mere status of being an alcoholic or illegal drug user may merit such protection").

To determine what disabilities are protected by the Minnesota Human Rights Act, Minn. Stat. § 363.01-.033 (1996), Minnesota state courts look for guidance to federal case law interpreting federal anti-discrimination statutes.  See State v. Hennepin County, 441 N.W.2d 106, 110 (Minn. 1989); Lang v. City of Maplewood, 574 N.W.2d 451, 453 (Minn. Ct. App. 1998).  Therefore, despite certain statutory limitations, the Minnesota Human Rights Act would probably provide protection for past drug use similar to that afforded by federal civil rights statutes.  See Minn. Stat. § 363.01 subd. 35 (1996) (defining "qualified disabled person" and stating that some drug- and alcohol-related conditions do not qualify as disabilities).

The MPHA suspended the challenged practices after Campbell's suit commenced, but in court it defended its inquiry and its release requirement as being authorized by the Housing Opportunity Program Extension Act of 1996 (Extension Act), 110 Stat. 834, 837-38 (1996) (codified at U.S.C.A. § 1437n(1)(e) (West Supp. 1998)). The Extension Act requires public-housing authorities to take steps to prevent persons with a history of illegal drug use or alcohol abuse from receiving public housing assistance if the drug use or alcohol abuse "may interfere with the health, safety, or right to peaceful enjoyment of the premises by other residents of the project . . . ." 42 U.S.C.A. § 1437n(e)(1)(A) (West Supp. 1998).

The parties did not dispute the material facts, so the District Court decided the case on cross-motions for summary judgment. Finding that nothing in the Extension Act repealed the pre-existing anti-discrimination provisions, the District Court enjoined the defendants from using question 7 and requiring all applicants to execute a release of their chemical-dependency treatment records. See Campbell, 175 F.R.D. at 535, 538. However, the court determined that Campbell's application, excluding his response to question 7 and the chemical-dependency treatment records he released, would have justified the MPHA's inquiry into his chemical-dependency treatment history, so it denied Campbell the other relief he sought, including injunctive relief that would place him on the waiting list for MPHA public housing. See id. at 537-38. In addition, finding that Campbell had failed to demonstrate common questions of law or fact and had failed to demonstrate sufficient numerosity of class members, the court denied class certification. See id. at 538. Both parties appeal.

II.

The MPHA asserts that Campbell does not have standing to bring this appeal. According to the MPHA, and findings by the District Court, information obtained by the MPHA in an unchallenged manner provided ample grounds for the MPHA to

-7-

inquire into Campbell's chemical-dependency treatment history and to require him to execute a release of his chemical-dependency treatment records. See id. at 537-38 (stating that the reference letter, when coupled with Campbell's criminal history and lack of residential history, justified an inquiry into Campbell's chemical-dependency treatment history, so he had suffered no harm from the challenged inquiry and release requirement). The MPHA argues that, because Campbell would have been found ineligible even if the challenged conduct had not occurred, he cannot show any injury that he could ask this Court to redress.

Standing is a threshold matter that, if absent, prevents this Court from exercising jurisdiction over Campbell's appeal. See Arkansas Right to Life State Political Action Comm. v. Butler, 146 F.3d 558, 560 (8th Cir. 1998), petition for cert. filed, 67 U.S.L.W. 3438 (U.S. Dec. 28, 1998) (No. 98-1040). Therefore, we must find that Campbell has standing to bring this suit before we can reach the merits of his appeal. See Steel Co. v. Citizens for a Better Env't, 118 S. Ct. 1003, 1012-13 (1998) (holding that federal courts may not consider other issues before resolving standing, an Article III jurisdictional matter).

The Constitution requires a party to satisfy three elements before it has standing to bring suit in federal court: injury in fact, causation, and redressability. See id. at 1016-17. Campbell, as the party invoking federal jurisdiction, has the burden of establishing these three elements. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). At the summary judgment stage, he must set forth by affidavit and other evidence specific facts that, when accepted as true, support his position that he has standing to pursue his claims. See id. Our inquiry into standing is not a review of the merits of Campbell's claims. See Warth v. Seldin, 422 U.S. 490, 500 (1975) (distinguishing standing from a review of the merits: "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal").

Reviewing the pleadings, the affidavits, and other evidence included in the record, we find two bases under which Campbell has standing to bring this lawsuit. First, if Campbell is correct that the MPHA violated federal and state anti-discrimination provisions when it asked question 7 and required the release of chemical-dependency treatment records in its application, then Campbell may have suffered injury when the MPHA improperly asked him to disclose information concerning his alleged disability. See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1230-31 (10th Cir. 1997) (holding an employer violated the ADA when it required all employees to disclose prescription drugs used); see also Northeastern Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville, 508 U.S. 656, 666 (1993) (finding an association had standing to challenge racial preferences used in awarding government contracts without showing its members would have been awarded the contracts in the absence of the challenged discrimination; "The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."). The MPHA admits it required Campbell to disclose his chemical-dependency treatment history and to release his chemical-dependency treatment records to it as part of his application--the actions which Campbell alleges caused his injury--and Campbell's requested relief would redress the injury he allegedly has sustained.

Second, Campbell alleges that, because he was not a current drug user and had not been convicted of the illegal manufacture or distribution of a controlled substance, the MPHA improperly determined his past drug use made him ineligible for public housing. The record contains an affidavit in which Campbell states that he no longer uses illegal drugs and that he stays away from people who use illegal drugs. See Appellants' App. at 37-38 (Declaration of Jeffrey Campbell). Furthermore, the affidavit states Campbell remains homeless because of the MPHA's determination, and that his homeless condition has aggravated his health problems and caused other economic and emotional damages. See id. at 38-39. If Campbell is correct that the

MPHA could deny him eligibility only for current illegal drug use, and not on the basis of past drug use or past association with drug users, then the MPHA improperly determined that Campbell was ineligible, and this determination may have caused the physical, economic, and emotional injuries Campbell alleges. The relief Campbell seeks would redress many of these injuries.

We believe that under either of these two bases, Campbell has satisfied the three elements of injury-in-fact, causation, and redressability, and has standing to bring this lawsuit. We repeat the fundamental principle that the ultimate merits of the case have no bearing on the threshold question of standing.

### III.

The MPHA argues that the District Court erred in finding that question 7 and the required release of chemical-dependency treatment records violate federal statutes and regulations, state statutes, and municipal ordinances. The MPHA claims that the Extension Act requires the MPHA to probe an applicant's history of chemical-dependency treatment, and that the Act allows the MPHA to use question 7 and the required release of chemical-dependency treatment records.

This Court holds that the Extension Act supersedes the federal, state, and local statutes and regulations upon which Campbell relies and permits the MPHA to include question 7 and require the release of chemical-dependency treatment records as part of its public-housing application. Section 9 of the Extension Act in part reads:

(e) Ineligibility of illegal drug users and alcohol abusers

(1) In general

Notwithstanding any other provision of law, a public housing agency shall establish standards for occupancy in public

housing dwelling units and assistance under section 1437f of this title--

>(A) that prohibit occupancy in any public housing dwelling unit by, and assistance under section 1437f of this title for, any person--

>>(I) who the public housing agency determines is illegally using a controlled substance;  or

>>(ii) if the public housing agency determines that it has reasonable cause to believe that such person's illegal use (or pattern of illegal use) of a controlled substance, or abuse (or pattern of abuse) of alcohol, may interfere with the health, safety, or right to peaceful enjoyment of the premises by other residents of the project;  . . . .

42 U.S.C.A. § 1437n(e)(1)(A) (West Supp. 1998) (emphasis added).

The plain language of the Extension Act is clear: public-housing authorities must prevent individuals using illegal drugs or abusing alcohol from living in public-housing accommodations or receiving public-housing funds.  See id.  The phrase, "[n]otwithstanding any other provision of law," signals that the Extension Act supersedes other statutes that might interfere with or hinder the attainment of this objective.  See Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18 (1993) ("As we have noted previously in construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override the conflicting provisions of any other section."); Schneider v. United States, 27 F.3d 1327, 1331-32 (8th Cir. 1994) (enforcing the plain language of a similar "notwithstanding" clause), cert. denied, 513 U.S. 1077 (1995).  The Extension Act seeks to free public housing from the scourge of illegal drug use and alcohol abuse.  According to the Act, the MPHA may pursue this congressional

mandate without regard to whether its actions comply with other state or federal statutes.[2] Therefore, we need not consider the appropriate interaction between Extension Act § 9 and the various anti-discrimination provisions that Campbell claims the MPHA has violated. Because the challenged measures adopted by the MPHA are consistent with Congress's clear purpose in enacting the Extension Act, the MPHA may include question 7 and the release requirement in its public-housing application without running afoul of the anti-discrimination provisions.[3]

In reaching this conclusion, we have not been asked to consider, and do not consider, whether federal law would permit the MPHA to deny eligibility to all applicants who answer question 7 affirmatively, even those applicants who received chemical-dependency or detoxification treatment many years before they applied for public housing. We note only that Congress seems to have addressed this concern: the Extension Act and subsequent legislation provide guidance for public-housing agencies in evaluating an applicant's drug rehabilitation efforts. See 42 U.S.C.A. § 1437n(e)(2) (West Supp. 1998); Quality Housing and Work Responsibility Act of 1998 (QHWRA), Pub. L. No. 105-276, § 576, 1998 U.S.C.C.A.N. (112 Stat.) 2518, 2639-40.

------

[2]The Supremacy Clause permits Congress to enact legislation that supersedes all state and local law, as the express language of Extension Act § 9 shows Congress has done here. See City of New York v. FCC, 486 U.S. 57, 63 (1988) ("When the Federal Government acts within the authority it possesses under the Constitution, it is empowered to preempt state laws to the extent it is believed that such action is necessary to achieve its purposes.").

[3]Congress amended 42 U.S.C. § 1437n on October 21, 1998, the day before oral argument in this case, when it enacted the Quality Housing and Work Responsibility Act of 1998 (QHWRA). The QHWRA does not affect the outcome of this appeal. As the MPHA conceded at oral argument, the MPHA must modify its ongoing policies to conform to the QHWRA, including the new Act's § 575(e), 1998 U.S.C.C.A.N. (112 Stat.) 2518, 2637, which narrows the chemical-dependency treatment information public housing agencies may require applicants to provide.

IV.

Campbell seeks individual relief, including damages and injunctive relief placing him on the waiting list for MPHA public housing, claiming that the MPHA improperly determined he was ineligible for public housing. Consistent with University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986), this Court gives the MPHA's determinations the same deference they would have in a Minnesota state court. According to Minnesota law, this Court should uphold the MPHA's findings unless "they are unconstitutional, outside the agency's jurisdiction, procedurally defective, based on an erroneous legal theory, unsupported by substantial evidence, or arbitrary and capricious." Carter v. Olmsted County Hous. & Redevelopment Auth., 574 N.W.2d 725, 729 (Minn. Ct. App. 1998) (reviewing a public-housing authority's rent-voucher eligibility determination).

Reviewing the record under the foregoing standard of review, we are unable to determine whether the decision reached by the MPHA was proper. The MPHA is obligated to exclude Campbell from public housing if "it has reasonable cause to believe" that, at the time of his application, he was using illegal drugs or abusing alcohol in a manner that "may interfere with the health, safety, or right to peaceful enjoyment of the premises by other residents of the project." 42 U.S.C.A. § 1437n(e)(1)(A)(ii) (West Supp. 1998). Some evidence in the record does tend to support the MPHA's determination that Campbell is ineligible for public housing. See Appellants' App. at 36-38 (Declaration of Jeffrey Campbell) (indicating that Campbell used illegal drugs in March 1995, less than fourteen months before he applied for public housing; and that he did not complete a chemical-dependency treatment program since his most recent illegal drug use). However, when denying Campbell's eligibility, the MPHA found that "[a]lthough Mr. Campbell has received treatment for drug/alcohol use he admits he is still using. Mr. Campbell exhibits paranoid behaviors when using." Id. at 60 (Hearing Officers Report for the Denial of Admission to Public Housing, Oct. 17, 1996). Regrettably, we do not have before

us all of the evidence the MPHA considered: Campbell's chemical-dependency treatment records, upon which the MPHA apparently relied, were not included in the record on appeal, nor can we find those records in the original District Court file. But evidence that we do have tends to undercut the MPHA's findings. The record we have before us suggests that Campbell no longer was using illegal drugs at the time of his application. Although it shows that he continued to consume alcohol, it does not indicate whether his consumption--"a six pack of beer a couple of times a month," id. at 38 (Declaration of Jeffrey Campbell)--constitutes alcohol abuse under the MPHA's standards or gives the MPHA reason to believe that Campbell may interfere with the health, safety, or right of quiet enjoyment of the other public-housing residents. Furthermore, at odds with what the MPHA hearing panel's decision implies, the record we have before us does not show that alcohol use causes Campbell to exhibit paranoid behavior. Given the incompleteness of the record the parties have provided to us (and, apparently to the District Court as well), we are unable to engage in meaningful review of the MPHA's denial of Campbell's application. In these circumstances, we believe the proper course is to remand the matter to the District Court with instructions to remand it to the MPHA for redetermination of Campbell's public-housing eligibility. We remind the MPHA that a determination of either eligibility or ineligibility must be supported by appropriate findings based on evidence in the administrative record.

V.

Finally, Campbell appeals the District Court's denial of class certification. Because we have determined that the MPHA's inquiry and release requirement are lawful, the question whether the District Court properly denied class certification is moot, and we do not reach it.

VI.

-14-

We vacate the injunction entered by the District Court and hold that the MPHA may use question 7 and the required release of chemical-dependency treatment records as part of its public-housing application, subject to any modifications required when the QHWRA, Pub. L. No. 105-276, 1998 U.S.C.C.A.N. (112 Stat.) 2518, becomes effective. We remand the case to the District Court with instructions that it enter summary judgment for the defendants on those claims.

We vacate the District Court's denial of individual relief for Campbell, and remand the case with instructions that the District Court remand to the MPHA for a redetermination of Campbell's public-housing eligibility.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.