SOUTH DAKOTA FARM BUREAU, INC., South Dakota Sheep Growers Association, Inc., Haverhals Feedlot, Inc., Sjovall Feedyard, Inc., Frank D. Brost, Donald Tesch, William A. Aeschlimann, Spear H. Ranch, Inc. and Marston Holben, Plaintiffs,

v.

State of SOUTH DAKOTA, Mark W. Barnett, in his official capacity as Attorney General of South Dakota, and Joyce Hazeltine, in her official capacity as Secretary of State of South Dakota, Defendants.

No. Civ. 99–3018.

United States District Court,
D. South Dakota,
Central Division.

Nov. 19, 1999.

John E. Simko, Jr., Woods, Fuller, Shultz & Smith, Sioux Falls, SD, Thomas P. Tonner, Tonner, Tobin & King, Aberdeen, SD, David S. Day, USD School of Law, Vermillion, SD, Timothy S. Bishop, Steffen N. Johnson, Nicola Jackson, Mayer, Brown & Platt, Chicago, IL, for plaintiffs.

Mark W. Barnett, Attorney General, South Dakota, Pierre, SD, Roxanne Giedd, Lawrence E. Long, Diane M. Best, Assistant Attorney Generals, South Dakota, Pierre, SD, for defendants.

John H. Davidson, Jr., USD School of Law, Vermillion, SD, for intervenors.

## ORDER GRANTING MOTION TO INTERVENE

KORNMANN, District Judge.

### BACKGROUND

[¶ 1] On November 3, 1998, the people of South Dakota, through the initiative process, amended Article XVII of the South Dakota Constitution by adding Sections 21 through 24 to such Article. Commonly referred to as Amendment E based upon its placement on the ballot, the added sections prohibit certain business organizations (in general, those businesses formed and operated for profit by non-family farmers under a limited liability format) from conducting farming operations in South Dakota. The business firms targeted by Amendment E are certain limited liability companies, limited liability partnerships, limited partnerships, business trusts, and certain farm corporations. General partnerships are included if one or more prohibited entities are partners.

[¶ 2] On June 28, 1999, South Dakota Farm Bureau, Inc. ("Farm Bureau") and eight other plaintiffs filed a complaint (Doc. 1) for declaratory and injunctive relief, challenging the validity of Amendment E under the United States Constitution and the Americans with Disabilities Act. On October 7, 1999, the proposed intervenors, Dakota Rural Action ("DRA") and South Dakota Resources Coalition ("SDRC"), filed a motion to intervene (Doc. 18). DRA is a not-for-profit organization whose claimed primary goal is to protect the economic viability of family farmers. SDRC is a not-for-profit corporation claiming to be dedicated solely to protecting the environment in South Dakota. Intervention is sought as of right and, alternatively, by virtue of the Court granting permissive intervention. Defendants responded (Doc. 24) to the motion to intervene and have no objection to the intervention. Plaintiffs filed a brief (Doc. 28) in opposition to the motion to intervene and also filed a request for oral argument (Doc. 29.) The proposed intervenors filed a reply (Doc. 32) to the brief of plaintiffs. Plaintiffs assert that the two groups have not met the requirements for intervention as of right because the proposed intervenors are adequately represented by the state defendants and have no interests worthy of protection which interests may be impaired if intervention is denied. Further, plaintiffs argue that the groups have failed to establish that they qualify for permissive intervention, plaintiffs claiming that the proposed intervenors' participation would obstruct and delay a fair and efficient adjudication of the respective claims of the present parties.

### DECISION

### I. Standing

[¶ 3] To meet Article III's "case or controversy" requirement, it is the burden of each intervenor to prove: (1) injury in fact, (2) causation, and (3) redressability. *See Campbell v. Minneapolis Public Housing Authority*, 168 F.3d 1069, 1073 (8th Cir.1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 1016–17, 140 L.Ed.2d 210 (1998)). Plaintiffs do not challenge the proposed intervenors' standing.

[¶ 4] An injury in fact is an "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypotheti-

cal." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). DRA alleges that the "injury in fact" to DRA and its members is the trend toward elimination of family farmers and the rural way of life. *See* Bixler affidavit ¶ 3. DRA alleges that Amendment E addresses this problem and DRA asserts that it was instrumental in drafting its language and donated substantial resources to the ballot initiative effort. *Id.* at ¶ 9. SDRC alleges that its "injury in fact" is the claimed harm done by non-family corporate farms to the environment in South Dakota, stating that farms of this type have a documented history of causing environmental pollution, such as groundwater contamination and other activities resulting in human disease. *See* Napton affidavit ¶¶ 4–5, 11. SDRC also helped draft the language of Amendment E and asserts that it (through its members) contributed hundreds of volunteer hours and other resources in working to place the measure on the ballot and ultimately achieve a favorable vote by a large majority of the State's voters. *Id.* at ¶¶ 6–7. Both groups have alleged concrete injuries which are neither conjectural nor hypothetical. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), (holding a fair housing organization alleges an injury in fact where "it devote[s] significant resources to identify and counteract a defendant's unlawful practices") and *Sierra Club v. Robertson,* 28 F.3d 753, 758 (8th Cir.1994) (stating "complaints of environmental and aesthetic harms are sufficient to lay the basis for standing").

[¶ 5] The second and third requirements for constitutional standing are easily satisfied: the initiation of this litigation by the plaintiffs challenges the validity of Amendment E. A decision by this Court striking down Amendment E would make the efforts of the proposed intervenors all for naught. According to their view, striking down Amendment E, as sought by the plaintiffs, would hasten the trend toward the elimination of family farmers and would result in additional harms to the South Dakota environment. Thus, standing is established.

## II. Intervention as of Right

[¶ 6] To intervene as of right, the proposed intervenors must show that: (1) the intervention is timely; (2) the proposed intervenors have a legally protectable interest in the subject of the action; (3) the disposition of the action may impair or impede the proposed intervenors' ability to protect that interest; and (4) the existing parties do not adequately represent the proposed intervenors' interest. *See* Fed.R.Civ.P. 24(a)(2).

[¶ 7] As to the first factor, the proposed intervenors' request is timely. When evaluating timeliness, courts look to (1) the reason for any delay, (2) how far the litigation has progressed, and (3) how much prejudice, if any, the delay will cause to other parties. *See Mille Lacs Band of Chippewa Indians v. Minnesota,* 989 F.2d 994, 998 (8th Cir.1993).

[¶ 8] DRA and SDRC acted immediately upon learning of this lawsuit. *See* Bixler affidavit ¶ 11 and Napton affidavit ¶ 8. The two groups filed their motion to intervene only three months after the complaint was filed in this case and the short delay is attributable to the proposed intervenors' need to obtain *pro bono* counsel. *See* Bixler affidavit ¶ 11 and Napton affidavit ¶ 10. DRA and SDRC applied to intervene before the filing of any substantive briefs. As of the proposed intervenors' motion filing date, only a complaint and answer had been filed. Intervention is clearly timely when no legally significant proceedings have occurred and this may be true even after the completion of discovery. *See Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1125–26 (5th Cir.1970) (finding intervention timely although the motion was filed more than a year after the action commenced). In this case, the Rule 16 scheduling order (Doc. 30) provides that discovery is to be completed by April 15, 2000. This deadline presents no practical problems to any party.

[¶ 9] Courts are to assess whether a claimed delay in seeking intervention would prejudice any of the parties, not "whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *United States v. Union Elec. Co.,*

64 F.3d 1152, 1159 (8th Cir.1995). At this stage in the litigation, the Court determines that the intervention will not prejudice the existing parties. It is clear that the proposed intervenors' motion is timely.

[¶ 10] To satisfy the second factor, DRA and SDRC must have a direct, substantial and legally protectable interest in the subject matter of the action. Intervenors argue that their efforts to protect the environment and family farmers from non-family corporate and limited liability company or limited liability partnership farms and their sponsorship of the ballot initiative for Amendment E are sufficient to show a legally protectable interest. *See* Intervenor's Memorandum in Support of Motion to Intervene (Doc. 19 at page 7, *et seq.*). Plaintiffs argue that the proposed intervenors' interest is deficient because it is essentially political. *See* Plaintiff's Brief in Opposition to Motion to Intervene (Doc. 28 at page 7, *et seq.*). Plaintiffs argue that sponsorship of Amendment E does not guarantee DRA and SDRC the right to intervene and cite the case of *Keith v. Daley* in support of their position (Doc. 28 at page 8).

[¶ 11] In *Keith v. Daley,* the Illinois Pro-Life Coalition ("IPC") attempted to intervene in a suit initiated by a group of physicians challenging the constitutionality of an Illinois statute regulating abortion. 764 F.2d 1265, 1267 (7th Cir.1985). IPC asserted that "its interests as a lobbyist support[ed] its intervention as of right and argu[ed] that its 'very existence is intertwined with its ability to promote this type of legislation and to insure (sic) that such laws are adequately defended if challenged.' " *Id.* at 1269. The court held that IPC lacked the direct interest required to support intervention as of right. *Id.* at 1268. In particular, the court held that the IPC's purpose was "essentially communicative and persuasive" and found that the organization informs people about abortion, provides alternatives to abortion, and "seeks to lobby legislators so that its views on the protection of the unborn may become law." *Id.* at 1270.

[¶ 12] The Court does not agree with plaintiffs' position that the circumstances in *Keith* mirror (or even closely resemble) the circumstances in the present case. IPC had only been incorporated for five years at the time of the litigation in *Keith. Id.* In contrast, DRA was organized in the late 1980's and has been in operation for over 12 years. *See* Bixler affidavit ¶ 3. SDRC has been in existence for seven years. *See* Napton affidavit ¶ 3. Further, DRA and SDRC's interests are not as attenuated as those of IPC because their purposes involve more than lobbying. DRA's stated claimed purpose is preserving family farmers. *See* Bixler affidavit ¶¶ 4 and 6. To achieve this purpose, DRA has been involved in local zoning disputes, state level permitting, and state legislation. *Id.* at ¶ 6. Unlike IPC, DRA not only conducted a public relations campaign for the passage of Amendment E but also was extensively involved in drafting the language of the amendment. The staff director and the chairperson of the so-called "factory farm committee" both served on the drafting committee and DRA's members contributed a total of $19,213.00 to the Amendment E campaign. *Id.* at ¶ 9. Like DRA, SDRC's purpose is greater than "communicative and persuasive." SDRC's claimed mission is to protect South Dakota's environment and the health of its citizens. *See* Napton affidavit ¶ 3. In addition to lobbying, SDRC conducts its work through education, advocacy and promotion of public participation in government decision-making. *Id.* Amendment E has no connection with lobbying activities before the South Dakota Legislature. A measure becoming law by virtue of a legislative act is sponsored by one or more legislators, not by a lobbyist. Amendment E came into being by virtue of the time consuming and very difficult process of gathering signatures of thousands of South Dakota voters on many petitions, timely filing the petitions with the Secretary of State and then promoting the passage of the initiative. The proposed intervenors are, together with the South Dakota Farmers Union and some other organizations, the "parents" of Amendment E. An initiative to amend the South Dakota Constitution arises "from the people" and not from the Legislature. It is an entirely "different animal" than a statute passed by the Legislature or a constitutional amendment submitted by the Legislature to

the people. In addition, *Keith* involved statutory abortion issues whereas the litigation in this case involves an amendment to the South Dakota Constitution targeting non-family farm limited liability entities. In *Keith*, the court explicitly held that IPC's interest in the protection of "unborn" children was insufficient to justify intervention because the "Supreme Court has unequivocally ruled on. the assertability of ·fetal rights." 764 F.2d at 1271. This is not true with regard to Amendment E, no court having passed upon its validity. *Keith* is not persuasive under the facts of the present case.

[¶ 13] Having invested a substantial amount of time and money and having been the "parents" or at least one of the "parents" of Amendment E, it is obvious that the disposition of the action in favor of plaintiffs would impair and impede the proposed intervenors' ability to protect their vested interests in Amendment E. Thus, for these reasons and the reasons previously stated, the third factor is satisfied.

[¶ 14] Turning to the fourth factor, the Court must determine whether the proposed intervenors have met their burden of proof to show that their interests will not be adequately represented by the existing defendants. The record is clear that, before Amendment E was enacted by the voters, Attorney General Barnett publicly expressed his opposition to the passage of Amendment E, expressed his belief that the measure would result in litigation, and expressed his concerns that the measure might run afoul of the United States Constitution. The Attorney General, a named defendant and the constitutional officer charged with defending the laws of South Dakota, wrote, consistent with the duties of his office, the explanation which he intended to be placed on the ballot. The full text of a proposed amendment to the state constitution is not printed on the general election ballot in South Dakota. Instead, the material printed on the ballot includes the title, explanation, recitation, place for voting, and the statement from the Attorney General required by SDCL 12–13–9. Attorney General Barnett attempted to warn voters, through the ballot explanation, that

Amendment E might be unconstitutional. His explanation, *inter alia*, expressed: "Amendment E could result in successful lawsuits against the State of South Dakota, under the U.S. Constitution." This portion of the explanation was challenged in Circuit Court, Hughes County, South Dakota, by certain supporters of then proposed Amendment E. Interesting enough, the South Dakota Farm Bureau Federation and others opposed to Amendment E were allowed, although without objection, to intervene in support of the Attorney General. Judge Zinter ordered the challenged language stricken. The South Dakota Supreme Court, on appeal affirmed. The holding was that the challenged language ."goes beyond the narrow authority granted by SDCL 12–13–9 and clearly exceeds the purpose of a ballot explanation. It is not a statement of how Proposed Constitutional Amendment E would change existing law. Rather, it is conjecture as to possible consequences of a change in existing law. As such, it has no place in a ballot explanation appearing on the general election ballot. It is purely a statement of opinion which is more appropriate to the political campaign and education process leading up to the election." *Hoogestraat v. Barnett*, 1998 SD 104, 583 N.W.2d 421, 424 (S.D.1998). This Court agrees fully with the holding of the South Dakota Supreme Court.

[¶ 15] Given all this history, it is not surprising that the proposed intervenors are highly skeptical as to whether the Attorney General will vigorously defend Amendment E in this lawsuit. Any private client would routinely seek to be represented by an attorney who is not only competent but also enthusiastic. On ·the other hand, attorneys are trained to vigorously represent any client even though the attorney may privately disagree with what the client did or is accused of having done. Here, of course, the Attorney General has publicly disagreed with what he is now required to defend. We all make statements we later wish we could retract. Having said all this, this Court has no doubt at all that the Attorney General will "do his job" in this lawsuit, despite his personal views and his previous public statements which could be described by some as ill advised. This Court very recently witnessed

the performance of Attorney General Barnett and his staff attorneys in another highly charged case, *American Meat Institute, et al. v. Barnett, et al.,* 64 F.Supp.2d 906 (D.S.D.1999). The Attorney General was called upon to defend a legislative Act which was, in several respects, poorly written and overly broad. Any attorney looking at such a statute would have had great misgivings about whether portions of such statute could be rationally defended from a Constitutional standpoint. The Attorney General and his staff attorneys did the very best they could with the "product" presented to them. Their representation was thorough, very professional and very helpful to the Court. It is the belief of the Court that these same attorneys will do likewise in this lawsuit. The Court therefore finds that the proposed intervenors have failed to meet their burden to show that their interests would not be "adequately represented by existing parties." Fed.R.Civ.P. 24(a). The motion to intervene as a matter of right should be denied.

## III. Permissive Intervention

[¶ 16] It is clear that the intervenors have acted in a timely fashion. Their claims and defenses, in the language of Fed. R.Civ.P. 24(b), "have a question of law or fact in common" with the main action. The intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Judges, as well as lawyers, all seeking to correctly and fairly interpret a statute and the United States Constitution, need as much help as we can receive. Perhaps recognizing this, the present defendants express no opposition to the intervention. As a matter of the Court exercising its discretion and taking into account the foregoing discussion as to intervention as a matter of right, the motion for leave to intervene should be granted.

## IV. Request for Oral Argument

[¶ 17] Plaintiffs have requested oral argument on the motion to intervene. To grant such request would further delay the progress of this lawsuit. Timely answers to the questions presented in this lawsuit are important to all South Dakotans and the parties should be encouraged to proceed with all due

dispatch. All parties have filed excellent briefs. The Court has read the briefs and the authorities cited. Oral argument is not necessary and the request should not be granted.

[¶ 18] Now, therefore,

[¶ 19] IT IS ORDERED, as follows:

1) The motion to intervene as a matter of right, Doc. 18, (Fed.R.Civ.P. 24(a)(2)) should be and the same is hereby denied.

2) The motion seeking leave to intervene as a matter of permission, Doc. 18, (Fed. R.Civ.P. 24(b)(2)) should be and the same is hereby granted and the caption of all further documents and pleadings shall show the names of the intervenors as parties.

3) The request for oral argument, Doc. 29, should be and the same is hereby denied.